FT. WORTH & D. C. RY. CO. v. GOBER.
(No. 1516.)

(Court of Civil Appeals of Texas. Amarillo. April 2, 1919. On Motion for Rehearing, April 30, 1919.)

1. RAILROADS ☞398(1) — INJURY TO PERSONS ON TRACK—LICENSEE—EVIDENCE.

Evidence *held* to show that a pedestrian using tracks of a switchyard was a licensee at the time of his injury.

2. RAILROADS ☞400(10)—INJURY TO PERSONS ON TRACKS—LICENSEE—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.

Facts *held* to present a question for the jury as to whether a licensee using tracks of a switchyard acted as an ordinarily prudent person.

3. RAILROADS ☞400(10) — INJURY TO PERSONS ON TRACK—LICENSEE—CONTRIBUTORY NEGLIGENCE — CHOICE OF DANGEROUS ROUTE.

One using railroad tracks as a licensee *held* not negligent as a matter of law, because he might have selected a safer route by walking in mud and water between the tracks.

4. RAILROADS ☞398(4)—INJURIES TO PERSONS ON TRACKS—LICENSEE—CONTRIBUTORY NEGLIGENCE — EVIDENCE — LOOKING AND LISTENING.

Evidence *held* to support a finding that a licensee using railroad tracks stopped, looked, and listened before going upon the track where he was injured.

5. RAILROADS ☞369(3) — INJURY TO PERSONS ON TRACK—LICENSEE—NEGLIGENCE OF TRAINMEN — FAILURE TO KEEP LOOKOUT AND SIGNAL.

That the fireman, engineer, and brakeman failed to keep a lookout for plaintiff, a licensee, or to see him until too late, and failed to give proper signals, *held* to show negligence of trainmen.

On Motion for Rehearing.

6. RAILROADS ☞381(3)—INJURY TO LICENSEE UPON TRACK — CONTRIBUTORY NEGLIGENCE — CHOICE OF DANGEROUS PASSAGEWAY.

It is not the law that a licensee using a railroad track as a passageway because it is accompanied with some danger, by that fact alone and as a matter of law, is guilty of contributory negligence.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Suit by S. A. Gober against the Ft. Worth & Denver City Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Thompson, Barwise, Wharton & Hine, of Ft. Worth, and Carrigan, Montgomery & Britain and F. S. Jones, all of Wichita Falls, for appellant.

Smoot & Smoot and S. Heyser, all of Wichita Falls, for appellee.

HUFF, C. J. Gober sued the railway company for damages on account of personal injuries sustained by him in being run over by a car propelled by a switch engine of appellant company. The negligence alleged is the failure of the train crew to take notice of appellee's danger, and to keep proper lookout and give warning at the approach of the engine and cars, and to blow the whistle or ring the bell. The injury occurred on the 28th of November, 1914, in the switchyards of the appellant in the city of Wichita Falls. The appellee's son-in-law was at work on a switch engine belonging to the Missouri,

Kansas & Texas Railway Company, which operated over the same tracks and yards. It was the custom of the wife or of appellee, Gober, to carry to the husband and son-in-law his lunch each day while he was at work with the engine. It was their custom to meet him at a point where Fourth street of the city ran through a viaduct under the tracks of the switchyards. The tracks at this point were on a dump some eight or ten feet above the roadway of the street, but it appears there was a path leading up the embankment, by which pedestrians could reach the level of the tracks. If the appellee did not find his son-in-law at this point with the engine, he went south along the track, and sometimes met him between that point and the Union Depot, which was situated about Eighth street. If he did not meet him he proceeded to the Union Depot,- where the lunch was left for him. The evidence shows between Fourth and Seventh streets there was no regular street crossing the track 1; that is, Fifth and Sixth streets do not cross the tracks, but pedestrians have footways crossing at those streets, and use the way constantly, and have done so for years with the knowledge of the railway company employés. The testimony authorized the finding that the tracks and dump on which the switches are placed were used constantly by men traveling along the railway towards the depot, and Seventh street, or with the road running north and south. On the occasion in question Gober took the lunch, as was his custom, to meet his son-in-law at the Fourth street crossing. When he got there he did not see him or his engine, and proceeded south to meet him, as was the practice. As he started south he was traveling, as we gather from the evidence, by the side of the track, until he came to the switch for house track No. 2, which runs west of the freight depot. He saw coming north towards him on house track No. 2 a switch engine. He stepped over on house track No. 1, which runs east of the freight depot. He followed this south until he came to some cars on that track; and then stepped over on the main line track. On this he saw the local coming down the track towards him, and he left the main line and stepped east to track No. 1, upon which the injury occurred. He testifies that when he left house track No. 1 he looked north and saw the switch engine going north and on a different track to No. 1. He also testified that on leaving the main track he glanced north, and still saw the engine going in a northerly direction. His testimony on cross-examination is susceptible of the construction that after he got on track 1, where the injury occurred, he did not look back or see the engine. It is inferable that when he left the main line the engine was 100 or 200 yards north of him. After he got on track 1 he traveled south, with his back

to the engine and car .which. struck him. This engine, .after passing a switch north of the injury, backed south on track 1, pushing a car. The engine and train on the main track passed the appellee about the time he was struck, and was making considerable noise. The facts are sufficient to show, had the crew with the engine, which struck appellee been looking, they could have seen appellee on the track from the switch where they started back; that there was no obstruction to prevent their doing so. They did not sound the whistle or ring the bell, and did not observe appellee until they were on him, too late to stop the car, and that appellee did not know of its approach until it struck him, knocking him down. One pair of the trucks of the car ran over him and mashed his arm so that amputation was necessary. The facts show that the tracks of appellant had been used as a passageway for years by pedestrians, and that this was known to the employés of appellant. The court submitted the case upon special issues. The jury found negligence as alleged. That appellee was not guilty of contributory negligence, and assessed his damages at $2,500. The court rendered judgment accordingly.

[1, 2] The first and second assignments are to the effect that the court should have directed a verdict for appellant because the evidence shows if appellee had looked before entering upon the track he could have seen appellant's switch engine and car, and that appellee stepped immediately in front of them without taking any precaution to see if he could do so with safety. Going upon the railroad track at the place appellee did in this instance was not negligence per se, and is not so declared by our statutes or by the courts. The circumstances under which appellee went upon the track are merely evidence upon the issue of contributory negligence. Even if in going upon the track the appellee was a wrongdoer or trespasser at the time of the injury it would not necessarily follow that he was guilty of contributory negligence. It is true ordinarily that he would be, but not under all circumstances. The evidence in this case shows he was a licensee, and that the way he traveled along the track was one frequently used by people of the city and himself. The evidence warranted the jury in finding that before he stepped on the track upon which the accident occurred he looked, and that, according to his then observation, the engine that struck him was going north and in an opposite direction to that which he was traveling on a different track. After he got on the track he had his back to the engine, and turned south and walked a short distance, when the engine came up behind him without a warning, and too late to stop, and ran him down. We believe under all the facts of this case it was for the jury to say under the circum-

stances then surrounding appellee whether he acted as an ordinarily prudent person would have done. Railway Co. v. Watkins, 88 Tex. 20, 29 S. W. 232; Railway Co. v. Phillips, 37 S. W. 620; Railway Co. v. Longino, 54 Tex. Civ. App. 87, 118 S. W. 198; Railway Co. v. Crowder, 25 Tex. Civ. App. 536, 64 S. W. 90; Railway Co. v. Broomhead, 140 S. W. 820; Thompson & Ford Lumber Co. v. Thomas, 147 S. W. 296; Railway Co. v. Starr, 194 S. W. 637; Railway Co. v. Douthit, 208 S. W. 201; Railway Co. v. Matthews, 99 Tex. 160, 88 S. W. 192; Lee v. Railway Co., 89 Tex. 583, 36 S. W. 63. We do not think under the facts of this case we would be justified in holding as a matter of law appellee guilty of contributory negligence. It is true at one place on cross-examination he stated that when he stepped on the track he did not look around, but he stated and repeated two or three times as he was leaving the house track he looked, and then went east to the main line, and at one place he stated when he stepped over from the main line to the track upon which he was hurt, "I glanced back at the switch engine, and noticed it going in a northerly direction. After I stepped over on track No. 1, I went south." There is evidence as he left the house track and main track he ascertained the location of the switch engine. It may be as he stepped on track No. 1, the one upon which he was injured, he did not look, and that he then continued his course south, but he was not struck, as we understand his evidence, until he had gone a short distance south on the track. The engine, when he stepped over on the track, was over 100 yards north of him, and it was only a few feet from the main track to track No. 1, and took only two or three steps to go from one to the other. The facts in this case bring it under that class of cases which makes negligence one of fact and not of law. We agree with the contention of appellant, if appellee stepped on the track immediately in front of the car and engine without looking, he would be guilty of negligence. In fact, if that was the situation, whether he looked or not before he stepped on the track, as there was nothing to obstruct his view, he would have contributed to his injury by his own culpable negligence, but such is not the finding of the jury. He looked before he crossed over to the track, and ascertained the engine and car were on another track, going in an opposite direction. He then got upon the track and proceeded upon his mission for a distance before he was struck. It may be there are facts and circumstances supporting appellant's contention, but the jury saw proper to follow the facts and circumstances which authorized their finding, and the court would not have been justified in withdrawing such facts from their consideration.

[3] The third assignment asserts it was error to refuse to direct a verdict for appellant because there was a safer and better route, and that he negligently chose the more dangerous; that he could have gone by a route beside the tracks, etc. Appellee went to Fourth street to meet the engine operated by his son-in-law. On arrival he did not meet the engine, and he sought to meet the engine there on the track between that place and the Union Depot, where he would leave the lunch, if in the meantime he did not meet the son-in-law. The facts show that there were two or three ways to go to the Union Depot from the home of appellee, or rather that of his daughter, but in going those ways he would not meet the son-in-law where it was usual and customary, and if he did not meet him at that point, as we understand the facts, he would have to go down the dump to the way or street outside the tracks. There is also evidence that he could have gone between the tracks, but it was shown that there was mud and water between, and none on the tracks. Under all the facts we believe it was a question for the jury. The proposition asserted by the assignment has frequently been discussed by the courts. The Longino Case, 54 Tex. Civ. App. 87, 118 S. W. 198, Broomhead Case, 140 S. W. 820, Thomas Case, 147 S. W. 296, and other authorities cited under preceding assignments, have given the rule governing this class of cases, and further discussion of the proposition is not deemed necessary in this case. See, also, Railway Co. v. Balthrop, 167 S. W. 246; Railway Co. v. Goodwin, 177 S. W. 545, at page 548.

[4] The fourth assignment asserts there is no evidence to support the answer of the jury to the sixth issue. The jury answered in the affirmative issue No. 6, which is:

"Find whether or not, before going onto the railroad track of the defendant railroad, where the plaintiff was hurt, whether or not the plaintiff stopped, looked, and listened before going onto the said railroad track, where he was injured."

The appellee testified he looked back north, and located the switch engine before he got on the track. The appellant introduced a witness, who took appellee's statement shortly after his injury, and testified that he made the statement, "When I got to this side track I never looked back on the track." This is not a statement that he did not look "before" going onto the track, and is not contradictory to his testimony that before he crossed he looked, but is consistent with his other testimony that after he got on the track he did not look back. We think the jury have ample evidence to support their finding on this issue.

The fifth and sixth assignments are overruled. The evidence we think authorized the submission of issue No. 8.

[5] The seventh and eighth assignments and propositions thereunder assert there was no evidence on the issue of negligence on the part of the operators of the engine which struck appellee. We believe there was evidence which would authorize a finding that the track where appellee was injured was commonly used by the public, and that persons then and for years passed along at that point, which was within the knowledge of the train crews working in the yards. That the way was open with no obstructions from where the engine started back south along the track appellee was traveling, and nothing which prevented the crew from seeing appellee within time to have prevented the injury. The engine was backing, pushing a car which obstructed the view of all the crew except a fireman, whose duty it was to look after the rear, but at that time he had left his post of observation; that the engineer failed to keep a lookout to the rear, and failed to see that the fireman, who was under his orders, did so. The brakeman on the rear end of the car, whose duty it was to keep a lookout, failed to observe appellee, though there was nothing to obstruct his view until he was almost on him, and then failed to give proper stop signals. That the bell was not rung or the whistle sounded. We think the issue was properly submitted to the jury, and that there was no error on the part of the court in submitting the same.

The tenth and eleventh assignments will be overruled.

We believe under the assignments and the facts of this case the judgment of the trial court should be affirmed.

### On Motion for Rehearing.

[6] The appellant in its motion assumes apparently that we based our holding that contributory negligence as to the way was a question for the jury on the ground that the appellee testified that he could have gone between the tracks but for the mud and water. We did not intend so to hold, but held under all the facts of this case it was a question for the jury. It is not the law that a licensee using the track as a passway because it is accompanied with some danger by that fact alone, and as a matter of law, is guilty of contributory negligence. The Byrd Case, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137, and Mathews Case, 100 Tex. 63, 93 S. W. 1068, cited by appellant, do not so hold, as we read

them. The Thomas Case, 147 S. W. 296, and Broomhead Case, 140 S. W. 820, discuss the above Supreme Court cases, and show wherein they differ from cases with facts similar to the instant case, and in the two latter cases writs of error were denied by the Supreme Court. In the Longino Case, 54 Tex. Civ. App. 87, 118 S. W. 198, the Supreme Court in passing upon the writ affirmed that case 103 Tex. 250, 126 S. W. 8. It was held by the Supreme Court that whether one struck by a train at a place so much traveled by pedestrians that he was not a trespasser exercised ordinary care in looking back for the train was, under the evidence of that case, a question for the jury. The opinion by the Supreme Court in the case was written by the same judge who wrote the opinion in the Byrd Case, supra. The facts show in this case that before the appellee stepped on the track where he was injured he ascertained the location of the switch engine which struck him to be a considerable distance north of him and going at that time in an opposite direction; and, while he traveled a distance on the track before he was struck, it was but a very short distance. Though there may have been some danger in stepping on the track, he had the right to assume that those operating the engine would keep a proper lookout for persons on the track where it was usual and customary for them to be, and that they would give the proper warning. In all cases it necessarily must be the safe way to keep off the track, and it is hard to conceive but that the destination could be reached that way without going along the track, but we do not understand that it necessarily follows because there is a safe way a licensee is guilty as a matter of law of contributory negligence. The circumstances may be such that it is not negligence to so use the track. In our opinion, this case raises an issue of fact for the jury. As we understand, in a case where the facts are somewhat like this, the Supreme Court, in Railway Co. v. Wall, 102 Tex. 362, 116 S. W. 1140, held it was a question for the jury whether a person of ordinary prudence would have walked upon the track under the then surrounding circumstances.

Believing that the facts and circumstances of this case raise the question of contributory negligence as a fact and not as a matter of law, we held the court properly submitted that question to the jury. We believe the motion for rehearing should be overruled.