## SOUTHERN PAC. CO. v. DE LA CRUZ.
### (No. 173-3193.)

(Commission of Appeals of Texas, Section B. Feb. 23, 1921.)

**1. Master and servant ⊜⇒204(1)—Defense of assumed risk available under federal act.**

Except in those cases where the defense of assumed risk is taken away by express provisions of the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665), that defense remains as it existed at common law before the act was passed.

**2. Master and servant ⊜⇒213(2)—Defense of assumption of risk as distinguished from contributory negligence held applicable to railway blacksmith's helper using unsafe method.**

The common-law defense of assumed risk, available under the federal act as distinguished from contributory negligence *held* presented by a showing that a railway blacksmith's helper received injuries to his thumbs by the falling of a trip hammer while he was using his hands, instead of tongs furnished, to place an iron in position under the hammer.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by Robert De la Cruz against the Southern Pacific Company. Judgment for plaintiff, and defendant appealed to the Court of Civil Appeals, which affirmed the judgment (201 S. W. 428), and the defendant brings error. Judgment of the trial court and of the Court of Civil Appeals reversed, and cause remanded for new trial.

Beall, Kemp & Nagle, of El Paso, for plaintiff in error.

G. E. Wallace and W. S. Berkshire, both of El Paso, for defendant in error.

McCLENDON, J. The plaintiff, Robert De la Cruz, while in the employ of defendant railway as blacksmith helper, engaged in placing an iron mold in position under a "trip hammer," received injuries to his thumbs caused by the sudden falling of the hammer. This suit was brought to recover compensatory damages under the allegation that the injuries were proximately caused by the negligently unsafe and dangerous condition of the hammer. The case was tried before a jury, and submitted under a general charge. Verdict and judgment were for plaintiff in the sum of $3,000, of which amount $600 was later remitted. The Court of Civil Appeals affirmed the judgment, one of the judges dissenting. 201 S. W. 428.

The assignments of error in the Supreme Court complain of the trial court's refusal to submit defendant's special charge No. 2, which presented as an absolute defense to the action the issue whether plaintiff assumed the risk by reason of his having employed an unsafe method of performing the work,

when a safe method was provided by the defendant; plaintiff having used his hands to place the mold in position under the hammer, whereas the evidence was sufficient to warrant a finding that defendant had provided tongs for that purpose.

This special charge is copied in full in the opinion of the Court of Civil Appeals. No question of its accuracy or of its propriety is made, except in the respect below mentioned. It is therefore not necessary to repeat the charge here.

[1] The case arose under and is governed by the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665); under which it is now authoritatively determined that, except in those cases where the defense of assumed risk is by express provision of the act taken away, that defense remains as it existed at common law before the act was passed. Boldt v. Railway Co., 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385; Railway Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, 1 Ann. Cas. 1915B, 475. So much is conceded in the majority opinion of the Court of Civil Appeals, and is not contested by defendant in error.

[2] The ground upon which the majority held that the special instruction was properly refused was that, where there are two ways in which a servant may perform his work, one safe and the other hazardous, and he chooses the latter, from which choice his injury results, he does not thereby assume the risk of injury which may result from this choice. In arriving at this conclusion, it was conceded that our Supreme Court, in the cases of Railway v. Hynson, 101 Tex. 543, 109 S. W. 929, and Railway Co. v. Mathis, 101 Tex. 342, 107 S. W. 530, has announced the contrary doctrine. It was pointed out, on the other hand, that the Supreme Court has frequently referred to such conduct as constituting contributory negligence, citing Railway v. Matthews, 100 Tex. 63, 93 S. W. 1068; Railway v. Wall, 102 Tex. 365, 116 S. W. 1140, and Railway v. Samuels, 103 Tex. 59, 123 S. W. 121. It is contended that these citations show that our courts have used the term "assumed the risk" to express the conception of contributory negligence; and the conclusion is reached that the circumstances embraced within the special charge do not present the defense of assumed risk, but only that of contributory negligence, and that the charge was properly refused, because the defendant in open court requested that the issue of contributory negligence be not submitted to the jury, and because the charge submitted the issue as presenting a complete defense to the action, whereas the federal act introduces the doctrine of comparative negligence.

The sole question presented for consideration is, therefore, whether the holding of the Court of Civil Appeals, to the effect that the

charge does not present the defense of assumed risk under the common law, is correct. That question we believe to be conclusively settled by the two cases first cited, as well as very generally by authority.

Before entering upon a discussion of this question, it is proper to say that in the Mathis, Wall, and Samuels Cases, above, the relation of master and servant did not exist; and those decisions have no bearing upon this question.

Many instances are found wherein courts have not drawn the proper distinction, or in fact any distinction at all, between the two defenses, and much confusion has resulted from this fact. This is alluded to by Mr. Labatt in the following language:

"Few lawyers, we imagine, realize the extent to which this department of the law has been unnecessarily obscured and complicated through the downright intellectual obliquity or the slovenliness of language by which the boundary line between them has been blurred or obliterated." 3 Master and Servant (2d Ed.) p. 3312.

It can be asserted, however, with all confidence, we believe, that probably no courts in the country have been more punctilious or guarded or more exact in expression in drawing the distinction between these two defenses than our own Supreme Court. Certainly nothing can be more clear than that the Supreme Court in the two cases first cited had this distinction obviously in view.

In the Mathis Case, opinion by Chief Justice Gaines, the plaintiff, an engineer, was injured by falling into the unlighted pit of a turntable in passing from the roundhouse of a railway to the depot. There were other ways for him to have gone, which were safe. He chose the dangerous path. The court had for decision four certified questions, the first three of which were: (1) Whether plaintiff as a matter of law assumed the risk in choosing the dangerous path; (2) whether he was guilty of contributory negligence as a matter of law; and (3) whether the trial court should have directed a verdict. We read from the opinion:

"Under the circumstances, we think that he assumed the risk, and consequently answer the first question in the affirmative.

"As pointed out in the case of Texas & Pacific Ry. Co. v. Bradford, cited above, between the doctrine of assumed risk and contributory negligence as applicable to such case, in contributory negligence the question usually arises, What would a prudent man have done under the circumstances? If a prudent man, under the exigencies of the case, would have taken the chances and acted as plaintiff acted, he is acquitted of negligence. If he assumes the risk the question of contributory negligence does not arise, for by his assumption of the risk he absolutely precludes himself from a recovery for any injury that may result to him from such risk. Our Legislature had this distinction in mind, when they passed the act approved April 24, 1905, which practically abolishes the distinction. Section 1 of that act provides, in effect, that assumed risk shall not preclude a recovery, in case 'where a person of ordinary care would have continued in the service with the knowledge of the defect and danger and in such case it shall not be necessary that the servant or employé give notice of the defect as provided in subdivision 1 hereof.' Laws 1905, p. 386. It was held in Gulf, Colorado & Santa Fé Ry. Co. v. Gasscamp, 69 Texas, 545, that it was a question for the jury whether a plaintiff who knew of the defects on a bridge and crossed it and was injured was guilty of contributory negligence, although there was another safe way he may have gone and thus avoided the injury. A judgment in favor of the plaintiff in that case was affirmed. We therefore answer the second question in the negative.

"It follows that the third question should be answered in the affirmative."

In the Hynson Case, opinion by Mr. Justice Brown, the question arose upon the propriety of a directed verdict. The plaintiff was a switchman, engaged in uncoupling cars. This he first attempted to do by use of a lever, which being out of order and failing to lift the pin, plaintiff reached for the pin with his hand, but finding it fast, stepped between the cars, and his foot was caught in an unblocked guard rail. The evidence showed that plaintiff had the right to control the movements of the train, and could have stopped it and gone to the other side and used another lever. The court say:

"Of the two ways in which he might have performed his service, one safe and the other hazardous, he chose that which was dangerous, from which choice his injury resulted. In making this choice he assumed the risk of injury which might result from the performance of his work in the way he had chosen"—citing Railway v. Mathis, above; 1 Labatt, Master & Servant, § 258; Railway v. McCarthy, 64 Tex. 632; Crawford v. Railway, 89 Tex. 69, 33 S. W. 534.

The disposition made of the case by the Supreme Court was to affirm the district court's judgment in defendant's favor under a directed verdict. This result could not have been reached had the defense been considered from the angle of contributory negligence, because in that event it would no doubt have been a jury question whether the action of plaintiff in choosing the method he did was such as would not be taken by a person of ordinary care under like circumstances.

It is generally well recognized that the same facts may, and often do, raise both defenses.

"The two defenses being distinct, it follows that evidence of the servant's having begun or continued work with a knowledge of the danger arising from the master's breach of duty raises both the questions whether he assumed that danger and whether he was negligent.

"If for any reason it appears that the master is precluded from availing himself of one of

these defenses, the servant's action may still be resisted on the ground that the other is applicable.

"The view has been taken that the existence of one defense necessarily excludes the other; but the reasoning is not clear." 3 Labatt, Master and Servant (2d Ed.) § 1220.

"It would seem that, in view of the contractual relations of the parties, the first question which, in a natural, logical sequence, first demands settlement, is whether the risk which caused the injury was one of those accepted under an implied agreement, and that the question whether the servant's conduct was imprudent only becomes material after the conventional assumption of the risk has been negatived. In a good many cases we find the essentially secondary and ulterior character of the second question fully recognized. Thus courts have refused to consider the defense of contributory negligence, where the evidence showed that the risk was assumed either as being ordinary or for the reason that, although it was extraordinary, the servant went on working with a full comprehension of its nature and extent.

"Whenever the evidence suggests that the servant knew of the extraordinary risk which caused the accident, the jury should be instructed regarding the legal consequences of such knowledge, as justifying the inference both of an assumption of the risk and of contributory negligence. It is erroneous, under such circumstances, to refuse instructions explaining the doctrine of assumption of risks, especially if it is also laid down explicitly that the servant's knowledge merely casts upon him the duty of using greater care in the use of, and in avoiding danger from, such appliance." Id. § 1221.

Quoting further from the same author:

"In these as in most other cases where the intentional adoption of a certain line of action is proved, the facts will also be suggestive of contributory negligence. But it is both unnecessary and disadvantageous to rely upon a conception which raises a disputable question, if a decisive element is supplied by the clear evidence of a deliberate choice on the servant's part, or the exercise of his own judgment in creating the conditions which occasioned the accident." Id. § 1166.

The last quotation is cited with approval in the Mathis Case. In the latest edition of this work the following is added to this paragraph:

"Where the servant deliberately chooses a dangerous rather than a safe method of performing his work, his inability to recover is usually predicated upon his negligence in so acting (see section 1249 et seq.); but, even if it could be said that he was not guilty of negligence, he is still barred of recovery by the doctrine of assumption of risk."

In section 1249, referred to, the question is treated from the viewpoint of those jurisdictions which hold that "a servant will ordinarily be pronounced negligent, as a matter of law, whenever it is clear from the evidence that there was a safe and a dangerous method available for the performance of the work in hand, and that he selects the latter method, with knowledge, actual or constructive, of the fact that it was dangerous."

Obviously where the servant is held to be negligent as a matter of law, the defense of assumed risk becomes immaterial. In such a case, to paraphrase the language in the Mathis Case: If he is guilty of contributory negligence as a matter of law, the question of assumption of risk does not arise. It is not probable that a case will be presented wherein it will be held in this jurisdiction that the servant was guilty of negligence as a matter of law in choosing the method of performing the work, in the absence of a clear showing of deliberate or reckless exposure to a known danger.

The federal Employers' Liability Act is in no sense unique in requiring that the distinction between the two defenses be clearly drawn. It was just as necessary to a correct decision in the Mathis and Hynson Cases as it is under the federal act.

We conclude that error was committed by the trial court in refusing to submit the issue presented in the requested charge, and that its judgment and that of the Court of Civil Appeals should be reversed, and the cause remanded to the former for a new trial.

PHILLIPS, C. J. The judgment recommended in this case by the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission on the question discussed.